**BARLOW'S, INC., an Idaho Corporation, Plaintiff,**

**v.**

**W. J. USERY, Secretary of Labor of the United States of America, in his official capacity, et al., Defendants.**

**Civ. No. 1–76–3.**

United States District Court,
D. Idaho.

Dec. 30, 1976.

As Corrected Jan. 25, 1977.

---

438

John L. Runft, Runft & Longeteig, Chartered, Boise, Idaho, for plaintiff.

Paul L. Westberg, Asst. U. S. Atty., Boise, Idaho, for defendants.

## MEMORANDUM DECISION AND ORDER

Before KOELSCH and ANDERSON, Circuit Judges, and McNICHOLS, Chief District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Plaintiff is an Idaho corporation in good standing situated in Pocatello, Idaho. Its business is the installation of electrical and plumbing fixtures, heating and air conditioning units. The corporation is engaged in interstate commerce in that it purchases and uses materials such as sheet metal which are made without the State of Idaho.

On September 11, 1975, Occupational Safety and Health Compliance Officer Daniel T. Sanger arrived at plaintiff's business premises for the purpose of conducting a safety and health inspection pursuant to Section 8(a) of the Occupational Safety and Health Act. 29 U.S.C. § 657(a).[1] Mr. Sanger properly identified himself and requested permission to inspect the nonpublic area of the premises. Mr. Ferrol G. "Bill" Barlow, President and Manager of Barlow's, Inc., refused to allow the inspection, basing his refusal on the absence of a search warrant. It is undisputed that Mr. Sanger did not have any cause, probable or otherwise,

---

1. 29 U.S.C. § 657(a) states:

"(a) In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized—
   (1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and
   (2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee."

to believe a violation existed nor was he in possession of any complaints by any employee of Barlow's, Inc.

As a result of Mr. Barlow's refusal, the Secretary petitioned this court on December 13, 1975, for an order compelling entry, inspection and investigation. A show cause order was thereafter issued and subsequent to the show cause hearing the Secretary's petition was granted on December 30, 1976.

On January 5, 1976, the court's order was presented to Mr. Barlow. Mr. Barlow again declined to permit the inspection. The next day the plaintiff filed the instant action requesting that a three-judge court be convened to enjoin the enforcement of the Act on the ground of repugnance to the Fourth Amendment and, further, requesting a temporary restraining order. The present three-judge court [2] was empaneled and the temporary restraining order was denied on the ground of an inadequate showing of immediate and irreparable injury.

This case squarely presents the issue of whether the entry and inspection provisions of the Occupational Safety and Health Act (OSHA), 29 U.S.C. § 651, et seq., are consistent and compatible with the dictates of the Fourth Amendment. [3]

I

■ Preliminarily, the Secretary advances two grounds to preclude this panel from reaching a decision on the merits. First, it is contended that this court lacks subject matter jurisdiction. This argument is premised on two principles: First, that judicial review is improper because Congress has designated an exclusive forum— the Occupational Safety and Health Review Commission (29 U.S.C. § 661), and, second, that plaintiff is not entitled to challenge

agency action for a supposed or threatened injury until prescribed administrative proceedings have been exhausted. In short, the Secretary contends that plaintiff should simply have permitted a full inspection under protest, thereby preserving its objections for the Commission and appellate courts, if and when a citation resulting from the inspection is actually issued against it.

The purposes served by the exhaustion doctrine, as set forth in *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), are absent from this case and we therefore will not apply the rule to this case. It is beyond question that the administrative channels of OSHA lack the expertise to consider and determine the constitutional question presented by this case. We also find, after a consideration of the factors set forth in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), that the issue presented by this case is ripe for judicial determination. The issue presented is one of constitutional law only and, further, the plaintiff is placed in a dilemma of being forced to give up his asserted right of privacy or potentially finding himself in contempt of court. We therefore reject the Secretary's contention that this court lacks subject matter jurisdiction.

■ The Secretary's second ground urged in support of dismissal is that plaintiff's failure to appeal the order of December 30, 1976, requiring the inspection bars the present action on res judicata grounds. Our review of the transcript of that hearing convinces us that the presiding judge reserved the constitutional issue on the basis that it was premature. The ruling in that case, Civil 4–75–58, clearly left open the

---

2. During the pendency of these proceedings Judge Koelsch took senior status and Judge Anderson was elevated from district judge to circuit judge and continues to participate in this matter by designation of the Chief Judge of the Ninth Circuit.

3. AMENDMENT IV—SEARCHES AND SEIZURES

"The right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

door for subsequent litigation of the Fourth Amendment claim. We thus proceed to the merits.

## II

In *Frank v. Maryland*, 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959), the Supreme Court upheld the conviction of Aaron D. Frank who refused to permit a Baltimore City health inspector to enter and inspect his premises without a search warrant. This holding was expressly overruled by the Supreme Court in *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and its companion case, *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). In *Camara* appellant was awaiting trial on a criminal charge of violating the San Francisco Housing Code by refusing to give permission to a city housing inspector who sought to inspect appellant's residence without a warrant. The court, in tracing the history and scope of the Fourth Amendment, stated:

> "Nevertheless, one governing principle, justified by history and by current experience, has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." 387 U.S. at 528–29, 87 S.Ct. at 1730 [citations omitted].

The court went on to hold that under the Fourth Amendment a person has the constitutional right to insist that a search warrant be obtained before an administrative inspection of a private residence is allowed.

In *See, supra*, the court was faced with a warrantless inspection of a commercial warehouse in the course of a municipal fire, health and housing program. In expanding its *Camara* holding to include commercial structures as well as private residences, the court stated:

> "We therefore conclude that administrative entry, without consent, upon the portions of commercial premises which are

not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure." 387 U.S. at 545, 87 S.Ct. at 1740.

In *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), the court narrowed the scope of its *Camara* holding in upholding the warrantless inspection of the premises of a retail dealer of liquor. In *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), the *Colonnade* reasoning was expanded to permit warrantless inspections of firearms dealers.

## III

It is upon the framework of the above-mentioned cases that we must base our decision. We reject the notion as espoused in *Brennan v. Buckeye Industries, Inc.*, 374 F.Supp. 1350 (S.D.Ga.1974), that the *Colonnade* and *Biswell* decisions envision a trend of the Supreme Court to generally narrow the holdings of *Camara* and *See*. Instead, we find that the warrantless inspection scheme pursuant to OSHA is more properly aligned with and must be controlled by the holdings in *Camara* and *See, supra*. See *Brennan v. Gibson's Products, Inc. of Plano*, 407 F.Supp. 154 (Three-judge court, E.D.Texas, 1976).

We simply cannot overlook the fact that in *Colonnade* and *Biswell* the court dealt with an "industry long subject to close supervision and inspection" (*Colonnade*, 397 U.S. at 77, 90 S.Ct. at 777), and a "pervasively regulated business" (*Biswell*, 406 U.S. at 316, 92 S.Ct. 1593). We believe that both of those cases fit into the *Camara* categorization of "certain carefully defined classes of cases." We have no such industry in this case. OSHA applies to all businesses that affect interstate commerce. 29 U.S.C. § 651(b)(3). As such, it applies to a wide variety of over 6,000,000 work places and does not focus on one particular type of business or industry. It cannot be questioned that this broad spectrum of businesses can be distinguished from the heavily-

regulated liquor and firearm industries encountered in *Colonnade* and *Biswell, supra.*[4]

We have also had the benefit, not enjoyed by the court in *Brennan v. Buckeye Industries, Inc., supra*, of recent Supreme Court pronouncements which show a continued allegiance to the *Camara* and *See* holdings as expressing the court's views on the scope of the Fourth Amendment. In *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), the court was faced with a statute and regulations which permitted warrantless searches for aliens, without probable cause, within a one hundred mile zone along the international border. The court invalidated these roving searches by the Immigration and Naturalization Service, finding that such searches:

> "embodied precisely the evil the court saw in *Camara* when it insisted that the 'discretion of the official in the field' be circumscribed by obtaining a warrant prior to the inspection." 413 U.S. at 270, 93 S.Ct. at 2538.

The court went on to distinguish *Colonnade* and *Biswell* by noting that "businessmen engaged in such federally licensed and regulated enterprises accept the burdens as well as the benefits of their trade, . ." 413 U.S. at 271, 93 S.Ct. at 2538.

More recently, in *Air Pollution Variance Board v. Western Alfalfa Corp.*, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974), an inspector of the Colorado Department of Health conducted daylight visual pollution tests of smoke being emitted from the company's chimney. The inspector had entered the outdoor premises of the business without the owner's consent or having obtained a search warrant. The court expressly reaffirmed the holdings of *Camara* and *See*, but held them inapplicable to the case because of the "open fields" doctrine. See *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).

There is one common thread among these cases that requires the result we reach here. In *Camara, See* and *Western Alfalfa, supra*, each was involved with statutory and regulatory schemes aimed at promoting and protecting public health and safety. The warrantless inspections authorized under OSHA likewise seek to promote public health and safety and therefore must be controlled by *Camara* and *See.*

The analysis which we have outlined above is consistent with that taken by another three-judge panel in *Brennan v. Gibson's Products, Inc. of Plano, supra.* While we adopt, in general, the similar reasoning employed there, we decline the invitation to judicially redraft an enactment of Congress. Unlike the *Gibson's Products* court, we cannot accept the proposition that the language of the OSHA inspection provisions envision the requirement that a warrant be obtained before any inspection is undertaken. Certainly, Congress was able, had it wished to do so, to employ language declaring that a warrant must first be obtained, the procedures under which it is to be obtained, and other necessary regulations. Congress did not do so and we refuse to accept that duty.

---

**4.** The Congressional investigations revealed in the legislative history of the Act (3 U.S.Code Congressional and Administrative News, 91st Congress, Second Session, 1970, p. 5177, et seq.) make a persuasive case for "need" in the health and safety fields. We, of course, do not sit in judgment of the wisdom of Congress. Our only concern is the alleged affront to the Fourth Amendment. The rationale of an anonymous saying "Expediency is the argument of tyrants, it precedes the loss of every human liberty" seems of forceful application here. That the end result may be laudable and desirable does not justify the means used to accomplish it when constitutional prohibitions are confronted. To paraphrase Burke, *Impeachment of Warren Hastings*, February 16, 1788; "The Constitution (law) and arbitrary power are in eternal enmity." We suggest that there are other less intrusive and oppressive methods of accomplishing the intended result, e. g., employer reporting requirements with provisions for employee contribution and participation; employer-employee safety committees; encouragement of employee complaints; in the organized management-labor relations field a greater and more forceful input by labor unions as the safety representative of their members; efforts toward better enforcement by the states of their health and safety laws, etc. We subscribe to the *Camara* court holding that warrantless inspections must be confined to "certain carefully defined classes of cases." *Camara, supra*, 387 U.S. p. 528–9, 87 S.Ct. p. 1731.

442

## IV

We therefore hold that the inspection provisions of OSHA which have attempted to authorize warrantless inspections of those business establishments covered by the Act, are unconstitutional as being violative of the Fourth Amendment.

IT IS SO ORDERED and judgment shall be entered accordingly.