576 F.2d 809
 6 O.S.H. Cas.(BNA) 1543, 1978 O.S.H.D. (CCH) P 22,710
Ray MARSHALL, Secretary of Labor, Petitioner,
v.
C. F. & I. STEEL CORPORATION and Occupational Safety and
Health Review Commission, Respondents.
 No. 76-1952.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted Jan. 24, 1978.
Decided May 3, 1978.
Rehearing Denied July 6, 1978.
 
 John A. Bryson, U. S. Dept. of Labor, Washington, D. C. (Alfred G. Albert, Acting Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Michael H. Levin, Counsel for Appellate Litigation, Allen H. Feldman, Asst. Counsel for Appellate Litigation and Stephen A. Bokat, Atty., U. S. Dept. of Labor, Washington, D. C., on the brief), for petitioner.
 Miles C. Cortez, Jr., of Welborn, Dufford, Cook & Brown, Denver, Colo. (Richard L. Fanyo of Welborn, Dufford, Cook & Brown, Denver, Colo., on the brief), for respondent C. F. & I. Steel Corp.
 Before HOLLOWAY, DOYLE and McKAY, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 This case arose under the Occupational Safety and Health Act. The review proceedings in this court have been instituted by the Secretary of Labor following a decision unfavorable to the Department by the Occupational Safety and Health Review Commission (OSHRC), pursuant to 29 U.S.C. § 660(b) (1970). The Commission's decision reversed a decision of its Administrative Law Judge, which had held the respondent Colorado Fuel and Iron Corporation in serious violation of 29 U.S.C. § 654(a)(1) (1970). The Commission's ruling was that the Secretary, through his agents, had not acted in accordance with 29 U.S.C. § 657(e) (1970), commonly called § 8(e) of the Occupational Safety and Health Act, which section extends to the employer an opportunity to have his representatives accompany the Secretary or his authorized representative during the physical inspection of any workplace under § 8(a) for the purpose of aiding such inspection.
 
 
 2
 C. F. & I. Steel Corporation is a large producer of steel and steel products. It employs over 5,000 people, and at its Pueblo facility there are two oxygen steelmaking furnaces, which are known as basic oxygen furnaces. These are housed in one building. The injuries in question which led to two deaths of employees of a contractor occurred during a so-called hot metal charge, which is part of the steelmaking process. A not infrequent incident of such a charge is that explosions take place as a result of accumulations of oil or moisture in scrap metal or in the basic oxygen furnace. When the explosion occurs, there is a discharge of particles of molten metal. The evidence before the Administrative Law Judge was that employees in the building where the two basic oxygen furnaces are housed are exposed to the risk of having molten metal particles contact them. To avoid this they must run for cover when the explosion takes place. No prior warning was here given at the time of the charge so as to give the employees an opportunity to go to a safe area. A siren sounds after the charges are complete, but not before.
 
 
 3
 The deaths in question occurred on October 31, 1973 to two employees of State, Inc., an independent contractor. State, Inc. had been installing antipollution equipment in the rafters of the basic oxygen furnace building when a first explosion occurred on August 27, 1973. C. F. & I. assured the employees of State, Inc. that the cause of this explosion would be corrected. On October 31, there was another explosion. Three State, Inc. employees were working in the rafters at the time, and a C. F. & I. electrician had just entered the building. Two of the State, Inc. employees were killed in connection with that incident.
 
 
 4
 C. F. & I. promptly notified compliance officers of OSHA of the two fatalities. The next day, three officers of OSHA visited C. F. & I. safety offices and stated that they wished to conduct an opening conference with representatives of State, Inc. There is some question as to whether C. F. & I. was represented at this opening conference, but at least it is conceded by C. F. & I. that it had representation during the latter part of this conference in the person of one Nachman, an engineer. The brief of C. F. & I. concedes that there was a C. F. & I. representative present during part of the opening session, and Commissioner Cleary, in his dissent from the Commission decision, accepted this. Also, the remaining two members of the Commission did not dispute this. Following the opening conference, one Alex Guzowsky, the general supervisor for safety and security for C. F. & I., accompanied the inspector to State, Inc.'s trailers. Guzowsky also arranged for plant passes for the inspectors and arranged an interview between the inspectors and the C. F. & I. crane charging operator. Guzowsky sat in on some of this interview. On the afternoon of that day, however, Darrell Nelson, the assistant to Guzowsky, took the party into the basic oxygen furnace building for the inspection.
 
 
 5
 On November 2, which was the following day, the inspectors presented themselves at the safety offices of C. F. & I. and requested a meeting with the shop superintendent for the purpose of getting a technical explanation of the steelmaking process. Mr. Guzowsky arranged that meeting and attended it. Following this, the inspectors visited the basic oxygen furnaces briefly, and after that they requested a closing conference with C. F. & I. On that occasion, C. F. & I. was informed that it might be cited for a violation.
 
 
 6
 Thereafter, it was cited for a serious violation of § 5(a)(1) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 654(a)(1) (1970). This latter provision requires each employer to furnish each of his employees employment and a place of employment free from recognized hazards likely to cause death or serious physical harm.
 
 
 7
 C. F. & I. contested the citation, whereupon an Administrative Law Judge heard the case, but concluded, contrary to the contention of C. F. & I., that the inspection satisfied § 8(a) and (e) of the Act. The Administrative Law Judge rejected C. F. & I.'s contention that the inspectors failed to present their credentials to the C. F. & I. officials and thereby denied C. F. & I. the opportunity to have a representative accompany them during the inspection. The Administrative Law Judge ruled also that there was a serious violation on its part and imposed a penalty of $300.00. The Commission reviewed this decision and reversed it, its holding being that the "walkaround" right provided by § 8(e) had been violated by the inspectors and on that account the citation should have been dismissed.
 
 
 8
 The basis for C. F. & I.'s contentions that their "walkaround" right had been violated, that is that § 8(e) of the Act had not been complied with, are, first, that there was not a substantial compliance with § 8(e) of the Act and that this was required. Second, that the sanction imposed, that is dismissal of the citation, was proper based upon the requirements of § 8(e). Third, that the violation in question by the inspectors was of a constitutional dimension.
 
 I.
 
 9
 C. F. & I. vigorously argues that we are bound by the findings of fact of the Commission. This we do not deny, but there are no findings of fact contained in the majority opinion. Commissioner Moran wrote for himself and Chairman Barnako. Commissioner Cleary dissented. The Moran opinion consisted of conclusions of law rather than any findings of fact. The findings of the Administrative Law Judge were not disputed. The emphasis in the conclusions of law was that there was a failure on the part of the inspectors to notify C. F. & I. at the time of arrival that it was going to be inspected. Based on its opinion that there was no justification for this omission, the majority reached a legal conclusion that this failure to notify resulted in C. F. & I.'s being effectively foreclosed from an opportunity to have its representative accompany the compliance officer during the inspection. This is all a misapprehension. The C. F. & I. general supervisor for safety and security was present during most of the time. When he was not present his assistant was, so the conclusion that C. F. & I. was foreclosed cannot stand.
 
 
 10
 Also, the Commission speaks of this as if the failure of the inspectors to present themselves formally misled C. F. & I. Not so. C. F. & I. had notified OSHA just prior to the presence of the inspectors and so it was understood why the inspectors were there. C. F. & I. had adequate notice, whereby its people could be present. The Company availed itself of the opportunity. Before the inspection was carried out, it was not possible for the inspectors to advise C. F. & I. that they might be cited because the inspectors did not know it. We must, then, disagree with the conclusion of the majority of the Commission that the failure formally to notify C. F. & I. constituted a violation of § 8(e). In so concluding, we are not going contrary to the Commission's findings. 29 U.S.C. § 660(a) (1970). See Lee Way Motor Freight, Inc. v. Secretary of Labor, 511 F.2d 864, 866, 869 (10th Cir. 1975). We are not, however, limited to the interpretative decision or legal conclusions of the Commission. We must examine the record as a whole, including the decision of the Administrative Law Judge. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 495-97, 71 S.Ct. 456, 95 L.Ed. 456 (1951).
 
 II.
 
 11
 The main thrust of C. F. & I.'s argument is that it was entitled to be advised at the very outset that it was being inspected and that instead the inspectors misled C. F. & I., causing it to believe that State, Inc. was the sole object. We disagree. The statutory requirement was satisfied. Unquestionably, § 8(e) is a vital safeguard of the employees' rights. Whether there is as well a right of constitutional dimension applicable under all circumstances is now presented to the Supreme Court in Marshall v. Barlow's, Inc., 430 U.S. 964, 97 S.Ct. 1642, 52 L.Ed.2d 354 (1977), noting prob. juris. in 424 F.Supp. 437 (D.Idaho 1976) (three-judge). There is no serious contention, however, in the case at bar that the Fourth Amendment was violated. The Commission decision was limited to violation of § 8(e). We are not saying that in different circumstances there could not be a Fourth Amendment violation. Our view is that no such problem is presented here.
 
 
 12
 The inspectors were well-known to C. F. & I. and the latter knew that they were there for the purpose of inspecting the site of the deaths which had occurred in connection with the hot metal charge on October 31, 1973, because C. F. & I. had notified the compliance officers the day previous to their appearance. A good deal is made of the fact that C. F. & I. was not represented at the initial conference with State, Inc. representatives, but it is undisputed, as we have indicated above, that there was representation by C. F. & I. at at least part of that meeting. In any event, it is the "walkaround" or inspection which is in question.
 
 
 13
 Section 8(e) in providing for the presence of representatives of the employer and the employees to accompany the inspectors on the inspection tour is addressing itself to "aiding such inspection." There can be no question but that C. F. & I. was given the right to be present during this "walkaround" inspection. What they are stressing, however, is that they were not given formal notice that they were the object of the inspection when the inspectors entered the plant. As we view it, however, it was not possible to tell them this. The employees injured were those of State, Inc., the contractor. The inspectors were investigating State, Inc. first. But there was no effort, conscious or otherwise, to exclude any C. F. & I. representative from accompanying the inspectors. Furthermore, it is impossible to conclude that C. F. & I. was unaware of the possibility that the inspection would ultimately center on it. No doubt it hoped that it would not. But C. F. & I. knew the facts and knew that the furnaces had been a threat to employees in the area.
 
 
 14
 We are of the opinion, therefore, that the inspectors substantially complied with the requirements of § 8(e). The inspectors conducted themselves in a reasonable manner. They advised C. F. & I. of the possibility that there would be a citation against it as soon as that possibility became apparent. The "walkaround" was attended by either Mr. Guzowsky or his assistant, Nelson, and so C. F. & I. cannot successfully contend that responsible personnel were not present. Moreover, C. F. & I. did not at any time make any objection that it was entitled to the presence of higher ranking representation. Section (e) was substantially observed.[1]
 
 III.
 
 15
 Moreover, the record does not show that C. F. & I. suffered any prejudice as a result of not having had a more formal notice at the outset. The decision of the Seventh Circuit in Chicago Bridge & Iron Co. v. OSHRC,535 F.2d 371 (7th Cir. 1976), was concerned with a case which was factually similar to the present case. The worksite there was a construction project which involved Chicago Bridge and Iron Company and numerous sub-contractors. On the inspection, the compliance officer took a number of employer and employee representatives, but failed to take a representative of the prime contractor. The inspector did, however, discuss the matter with a representative of Chicago Bridge and Iron Company before the inspection. No "walkaround" right was asserted by this representative. The court concluded that there had been a substantial compliance with § 8(e) and upheld the citation absent a showing that the employer had been prejudiced by not participating. The Chicago Bridge & Iron Co. case was followed in the Ninth Circuit case of Hartwell Excavating Co. v. Dunlop, 537 F.2d 1071 (9th Cir. 1976), wherein substantial compliance with § 8(e) was found, notwithstanding that the employer's superintendent was not notified of the inspection until part of it had been completed. The evidence showed that the inspector had made an unsuccessful attempt to locate the supervisor. It was ruled that this was a substantial compliance and that prejudice had not been shown.
 
 
 16
 Finally, the sanction of dismissal is grossly excessive in relation to the act of the inspectors. Cf. the Eighth Circuit's decision in Marshall v. Western Waterproofing Co., 560 F.2d 947, 951-52 (8th Cir. 1977). See also Hartwell Excavating Co. v. Dunlop, 537 F.2d 1071 (9th Cir. 1976); Accu-Namics, Inc. v. OSHRC, 515 F.2d 828, 833-34 (5th Cir. 1975), cert. denied,425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976). Here we have a case in which the hazards were of considerable magnitude and actual exposure was not limited to minor injuries. It is incongruous to impose the extreme sanction of dismissal in such circumstances.
 
 
 17
 The decision of the Commission is, therefore, reversed and the cause is remanded with directions to the Commission to reinstate the citation and conduct further proceedings consistent with this opinion.
 
 
 18
 McKAY, Circuit Judge, dissenting as follows:
 
 
 19
 It is important at the outset to note what is not at stake in this appeal. Nothing we do here can restore the lives of the two victims of this industrial accident. Our decision will not affect the survivors' compensation rights. An affirmance of the Commission's decision vacating the citation will not prevent the agency from correcting a continuing hazard if one exists. By giving proper notice and following its own minimum procedures, the agency can take all the necessary steps to deal with the problems that legitimately concern it.
 
 
 20
 What technically is at stake is a $300 civil penalty. What more importantly is at risk, however, is something so fundamental to our selected order of liberty that it is twice expressly incorporated into the Constitution due process. This appeal focuses on the cornerstone of due process the right to timely notice and the opportunity to be heard at a time calculated to best serve the interests of the accused[1] and the cause of truth. C. F. & I. was not afforded these due process rights whether the agency's actions are measured by the broad standards of the Constitution or even by the more limited standards of the agency's own regulations.
 
 
 21
 This accident occurred at a large industrial site owned by C. F. & I. Steel Corporation. While work was being performed at the site by State, Inc., an independent contractor, an explosion in the basic oxygen furnace area caused the deaths of two State, Inc. employees. In compliance with the legal requirements governing a site owner in such circumstances, C. F. & I. notified the Occupational Safety and Health Administration (OSHA) of the deaths and the agency decided to investigate. What followed is the rub.
 
 PRELIMINARY QUESTIONS
 
 22
 What are the agency's own minimum standards of conduct in pursuing an investigation?
 
 
 23
 Sections 8(a) and (e) of the Occupational Safety and Health Act require that agency inspectors present "appropriate credentials to the owner" before commencing an inspection, and that a representative of the employer "be given an opportunity to accompany the (inspectors) during the physical inspection of any workplace . . . for the purpose of aiding such inspection." 29 U.S.C. §§ 657(a), (e) (1970). The Secretary's own regulations further require:
 
 
 24
 At the beginning of an inspection, Compliance Safety and Health Officers shall present their credentials to the owner, operator, or agent in charge at the establishment; explain the nature and purpose of the inspection; and indicate generally the scope of the inspection and the records . . . which they wish to review.
 
 
 25
 29 C.F.R. § 1903.7(a) (1977). The regulations also refer to the opportunity to accompany agency inspectors as "the right of accompaniment." Id. at § 1903.8(d). The courts have confirmed the obvious that these minimum standards are mandatory. See e. g., Chicago Bridge & Iron Co. v. OSHRC, 535 F.2d 371, 375 (7th Cir. 1976).
 
 
 26
 What had been the agency's past practice on which C. F. & I. might reasonably have relied?
 
 
 27
 At all 20 plus previous inspections of C. F. & I. the inspectors always presented their credentials at the outset. Record, vol. 2, at 283. At all previous inspections opening conferences with C. F. & I. had been held. Id. at 281-82. The primary purpose of an opening conference is to provide notice of the inspection and an explanation of its scope and purpose to those "in charge at the establishment." See 29 C.F.R. § 1903.7(a) (1977). At all previous inspections the management officials in charge of the inspected areas had been allowed to accompany and had accompanied the inspectors. Record, vol. 2, at 283; id., vol. 3 (report of admin. law judge at 9).
 
 
 28
 What did the agency do in this case?
 
 
 29
 The administrative law judge found what the uncontradicted testimony showed that "(c)redentials were not presented." Record, vol. 3 (report of admin. law judge at 8); see id., vol. 2 at 263. An opening conference was held with the top management of State, Inc., but it is uncontradicted that C. F. & I. safety personnel "were specifically told no C. F. & I. personnel were to be in that conference." Id., vol. 2, at 264. There is sharp conflict as to whether a C. F. & I. employee may nonetheless have been present, but the conference was stated to be for State, Inc. only and was "never represented to be an opening conference with C. F. & I." Id. at 306. In fact, the only conference ever held with C. F. & I. management personnel was the closing conference after the inspection had been concluded and the determination had been made to "probably" cite C. F. & I. Id. at 262-63, 289, 301. C. F. & I. management personnel responsible for the basic oxygen furnace area did not accompany the inspectors. Id., vol. 3 (report of admin. law judge at 9). C. F. & I.'s safety officer testified he did not arrange for their presence because "(w)e were told this was strictly a State, Incorporated, investigation and CF & I personnel would not be needed." Id., vol. 2, at 265. The first time the inspectors requested the presence of C. F. & I. management was at the closing conference. Id. at 262.
 
 
 30
 What did the expert commission charged with the fact finding and rule interpretation functions decide were the facts?
 
 The Commission[2] found:
 
 31
 no question exists that (C. F. & I.) was not informed that it was going to be inspected until the day after it had occurred.
 
 
 32
 . . . (C. F. & I.) was effectively foreclosed from any opportunity to have its representative accompany the compliance officer during the inspection.
 
 
 33
 . . . .C.
 
 
 34
 . . . In fact, the actions of (the inspectors) led (C. F. & I.) to believe that it would not be inspected. Consequently, (C. F. & I.) had no cause to attempt to assert its right to accompany the inspectors.
 
 
 35
 C. F. & I. Steel Corp., 4 OSHC 1649, 1649-50 (1976) (emphasis in original). The majority erroneously characterizes these findings as "conclusions of law."
 
 
 36
 What authority does this court have to interfere with the decision of the Commission to set aside the citation?
 
 
 37
 The relevant statutes provide: "The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." 29 U.S.C. § 660(a) (1970). "The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2) (1976). When these standards of review are applied in this case as we have consistently applied them in the past, we have no alternative but to affirm.
 
 DISCUSSION
 
 38
 Entry by government officials onto private property for inspection purposes ordinarily requires issuance of a warrant, even for purely administrative inspections. See v. City of Seattle, 387 U.S. 541, 545, 87 U.S. 1737, 18 L.Ed.2d 943 (1967); Camara v. Municipal Court, 387 U.S. 523, 534, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). In Colonnade Catering Corp. v. United States, 397 U.S. 72, 77, 90 S.Ct. 774, 777, 25 L.Ed.2d 60 (1970), the Supreme Court explained: "Where Congress has authorized inspection but made no rules governing the procedure that inspectors must follow the Fourth Amendment and its various restrictive rules apply." Even when statutory or regulatory procedures are substituted for Fourth Amendment warrant requirements, these procedures must "provide substantially the same assurances (as a warrant)." United States v. Martinez-Fuerte, 428 U.S. 543, 565, 96 S.Ct. 3074, 3086, 49 L.Ed.2d 1116 (1976). Any "regulatory inspection system" seeking to avoid application of the Fourth Amendment warrant requirement must insure that inspections are "carefully limited in time, place, and scope." United States v. Biswell, 406 U.S. 311, 315, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87 (1972).
 
 
 39
 The issue of the constitutionality of warrantless OSHA inspections is presently before the Supreme Court in Marshall v. Barlow's, Inc., 430 U.S. 964, 97 S.Ct. 1642, 52 L.Ed.2d 354 (1977), noting prob. juris. in 424 F.Supp. 437 (D.Idaho 1976) (three-judge panel). Whether or not warrants are required for OSHA inspections, the sections 8(a) and (e) procedures should be meticulously followed to minimize the risk of unreasonable intrusion. See Brennan v. Buckeye Indus., Inc., 374 F.Supp. 1350, 1354 (S.D.Ga.1974).
 
 
 40
 A principal purpose of the search warrant is to give notice of authority to search. The presenting of credentials in an OSHA inspection likewise gives notice of the inspection's lawfulness and of the inspector's right to investigate. A warrant also gives notice of limits on the scope of a search. The section 8(a) explanation of scope and purpose of the inspection at the opening conference serves this purpose in an OSHA inspection.[3] The procedure would be constitutionally inadequate if the employer were "left to wonder about the purposes of the inspector or the limits of his task." United States v. Biswell, 406 U.S. at 316, 92 S.Ct. at 1596. Giving notice of accidents as required by law cannot remotely be considered a waiver of these notice requirements without raising other serious constitutional problems.
 
 
 41
 Individuals subjected to a search have the right to insure that it is kept scrupulously within its declared limits, whether the search is based on consent or warrant. United States v. Dichiarinte, 445 F.2d 126, 129-30 & n. 3 (7th Cir. 1971); see United States v. Peterson, 524 F.2d 167, 178 (4th Cir. 1975), cert. denied, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99, 424 U.S. 925, 96 S.Ct. 1136, 47 L.Ed.2d 334 (1976); cf. State v. Martelle, 252 A.2d 316, 321 (Me.1969) (tenant had right to be present during warrant search of apartment). Even if a principal purpose of the section 8(e) walkaround right is to aid the inspection, this statutory right also functions as a key safeguard in providing employers the opportunity to monitor inspections to insure they are kept within their declared scope. Indeed, the Secretary requires inspectors to honor all employer objections to any part of an inspection until the disputes are resolved under established procedures. 29 C.F.R. § 1903.4 (1977). The walkaround right also helps employers protect their interests by giving opportunity for on the spot input and clarification to aid the inspectors in their evaluations. See 29 C.F.R. § 1903.7(e) (1977).
 
 
 42
 Effective exercise of these rights to object, clarify, or otherwise guard his interests presupposes employer awareness that he is being inspected. That is, substantial compliance with section 8(e) cannot be achieved when an employer is not informed that he is under scrutiny or made aware of the scope of the investigation. Since section 8(e) itself does not require notice of an inspection or its authority and scope, section 8(e) must be read together with section 8(a). Satisfactory compliance with section 8(e) depends on adherence to the notice requirements of section 8(a), for only when an employer is aware that an inspection is intended, that the inspectors have proper authority and that the scope of the inspection is limited will an employer be able to guard the interests protected by section 8(e).
 
 
 43
 Sections 8(a) and (e) were not complied with in this case. No credentials were presented. In fact, the C. F. & I. safety officer, although previously acquainted with the inspectors, did not know the lead inspector was authorized to make safety inspections. C. F. & I. was not only "left to wonder about the purposes of the inspector or the limits of his task," see United States v. Biswell, 406 U.S. at 316, 92 S.Ct. 1593, which alone would invalidate the inspection, it was actively misled into believing it was not being inspected by assurances that the inspection "was strictly a State, Incorporated, investigation." Record, vol. 2, at 265.
 
 
 44
 The inspectors failed to provide C. F. & I. with any opening conference explanation of the inspection's scope and purpose as required by the agency's own regulations. "(W)e surely must require the agency to adhere to its own pronouncements, or explain its departures from them." Squaw Transit Co. v. United States, (10th Cir. 1978), 574 F.2d 492, at 496. This is particularly true when its announced procedures are intended to justify warrantless searches by allegedly providing "substantially the same assurances (as a warrant)." United States v. Martinez-Fuerte, 428 U.S. at 565, 96 S.Ct. at 3086.
 
 
 45
 C. F. & I. was deprived of its right under the regulations to designate its "authorized" representative to accompany the inspection team. See 29 C.F.R. § 1903.8(b) (1977). Indeed, the inspectors declared that "CF & I personnel would not be needed." Record, vol. 2, at 265. Mere presence and passive observance by the employer's safety officer or his assistant during portions of the inspection are clearly insufficient to fulfill the intended designs of section 8(e), especially in the absence of proper section 8(a) notice that the investigation was directed at C. F. & I. Having been excluded from the opening conference and having been told that C. F. & I. was not being investigated and that presence of management personnel was not needed, the safety officer can hardly be said to have been present as a section 8(e) protector of employer rights.
 
 
 46
 The majority seeks to excuse the agency's failures by saying that "(b)efore the inspection was carried out, it was not possible for the inspectors to advise C. F. & I. that they might be cited." It was also not possible to advise State, Inc. at that time that it might be cited, yet the inspectors provided State, Inc. with required notice, explanations and right of accompaniment. Certainly, it is not too much to expect that inspectors present credentials and explain the nature and scope of the inspection to all employers present at the same site. Since upon arrival the inspectors could not know which, if either, employer was guilty of any violations, the reasonable approach would have been to make their intrusion lawful as to both by giving the statutory notice, the explanation of scope and purpose, and the walkaround right to both employers.
 
 
 47
 It is not the prerogative of this court to excuse failure only to determine whether the Commission was arbitrary in its decision not to disregard the agency's failure to conform to the statutory mandates. The findings of the Commission are supported by overwhelming evidence in the record. Indeed, had the Commission opted for a contrary result, there would be insufficient evidence in the record to sustain the findings. If sections 8(a) and (e) are the intended bulwarks against unreasonable intrusions from OSHA inspections, then the level of alleged compliance in this case falls far short of that which would be sufficient.
 
 
 48
 The majority seeks to saddle C. F. & I. with the onus of proving it was prejudiced by the agency's failings. Whether substantial compliance with sections 8(a) and (e) is adequate employer protection when coupled with a showing by the Secretary that the employer was not prejudiced by any minor breach might be questioned. But certainly, under these facts where noncompliance is so glaring, the Secretary should not be able to insulate careless disregard of statutory rights by a rule requiring an affirmative showing of specific prejudice by the employer. To require an employer to prove how his representative's presence would have affected an inspection would be an impossible burden rendering the statutory requirements a nullity.
 
 
 49
 The Commission vacated the citation because no evidence was offered which was not tainted by the disregard of the walkaround right. C. F. & I. Steel Corp., 4 OSHC at 1650 n. 6. There is less impact from evidence suppression in such administrative hearings than in criminal cases because the inspectors can return and reinspect, employing proper procedures. The Secretary argues that return inspections impose an unreasonable strain on the agency's already limited manpower. Appellant's Brief at 27. The best solution is to follow proper procedures the first time, but lack of personnel certainly should be no justification for riding rough shod over employer rights. The fault for delay lies with the agency; the remedy lies there also. It is novel indeed to argue in effect that procedures which serve as the employers' Fourth Amendment protections are merely desirable and must yield if enforcement officers find them inconvenient due to a shortage of personnel.
 
 
 50
 The risk of mortal injury described in this case is grave. Where such risks exist in violation of the Act, their swift abatement is imperative. The gravity of a violation, however, should not cause this court to blink at the disregard of key procedural safeguards.
 
 
 
 [1]
 Our conclusion that C. F. & I. was not denied its statutory right is further supported by the legislative history of § 8(e). This shows that the provision for employer and employee representatives to accompany the inspectors was actually included in the Act to help inspectors to obtain full benefit from the inspection. See S.Rep.No. 1282, 91st Cong., 2d Sess., reprinted in (1970) U.S.Code Cong. & Admin.News, pp. 5177, 5187-88; Conf.Rep.No. 1765, 91st Cong., 2d Sess., reprinted in (1970) U.S.Code Cong. & Admin.News, pp. 5228, 5233-34. C. F. & I. has not shown that its representatives were less competent than other management officials who were available. The regulations which are promulgated under § 8(e) in order to define the scope of the "walkaround" right fail to recognize the right of management to have any particular quality of representative present on the "walkaround." See 29 C.F.R. § 1903.8(a)-(b) (1976)
 
 
 [1]
 This appeal involves only a civil penalty, but any OSHA investigation might also result in imposition of criminal sanctions. See 29 U.S.C. §§ 666(e)-(g) (1970). The need for proper notice at the beginning of an investigation is even more compelling because of this risk of criminal penalty particularly when, as the majority notes, "(b)efore the inspection was carried out, it was not possible for the inspectors to advise C. F. & I. that they might be cited" either civilly or criminally
 
 
 [2]
 It is, of course, the findings of the majority, not the dissenting, commissioners which are binding on this court
 
 
 [3]
 Compliance with the § 8(a) notice of authority and purpose requirements is essential to allow opportunity for timely objection to the lawfulness of the inspection as a whole. See 29 C.F.R. § 1903.4 (1977). Some courts have held that when an employer objects to inspection, a warrant must be obtained before inspection will be permitted. See, e. g., Dunlop v. Hertzler Enterprises, Inc., 418 F.Supp. 627, 631 (D.N.M.1976) (three-judge panel), appeal docketed, No. 76-2020 (10th Cir. Nov. 5, 1976); Brennan v. Gibson's Prod., Inc., 407 F.Supp. 154, 162 (E.D.Tex.1976) (three-judge panel). Failure to provide § 8(a) notice of an inspection would preclude an employer's exercise of the right to object