TALLMAN, Circuit Judge,
with whom Circuit Judges O’SCANNLAIN, CLIFTON, and CALLAHAN join,
dissenting:
The Fourth Amendment to our Constitution provides that “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated----” U.S. Const., amend. IV. The Amendment has always prohibited specific government conduct — “unreasonable searches and seizures” — not legislation that could potentially permit such conduct. It is for this reason that the Supreme Court has held that “[t]he constitutional validity of a warrantless search is preeminently the sort of question which can only be decided in the concrete factual context of the individual case.” Sibron v. New York, 392 U.S. 40, 59, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).
The Patels, nonetheless ask us to declare facially invalid under the Fourth Amendment a city ordinance that does not address the procedures the police must follow before entering a hotel to request the guest registers that hotels must keep. The ordinance says nothing of warrants, much less consent, exigencies, or any other recognized exception to the warrant requirement. We only know from the face of the statute that when the police do request the register, however they make that request, the hotel owner must provide it.
The Patels may be right in asserting that as a practical matter the Los Angeles Police Department has applied the ordinance to undertake searches that violate the Fourth Amendment. In that case, the Patels should have little problem challeng *1066 ing such a search on the facts of a particular search itself. They made such a claim when they filed their lawsuit but dropped it before trial. The district court looked at the city ordinance and saw nothing on its face suggesting it was unconstitutional in all of its applications. Now on appeal, the Patels ask us to assume the exercise of analyzing all potential searches that might be conducted pursuant to the ordinance in order to declare it deficient. We should decline the Patels’ invitation because the Supreme Court has told us to avoid the exercise altogether. My colleagues, though, have taken the bait and issued what amounts to no more than an advisory opinion. I respectfully dissent.
I
In Sibron v. New York, the New York state legislature had enacted a statute allowing a police officer, with “reasonable suspicion,” to “stop any person,” “demand” explanations, and “search such person for a dangerous weapon.” 392 U.S. at 43-44, 88 S.Ct. 1889. Two defendants sought suppression of evidence discovered pursuant to such searches, and they asked the Supreme Court to strike down the state statute as facially unconstitutional under the Fourth Amendment. Id. at 44, 88 S.Ct. 1889. On the same day the Supreme Court established the constitutional standard for “stop-and-frisks” in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court declined to address the facial challenge to the statute in Sibron.
The Court explained that federal courts should refuse “to be drawn into what we view as the abstract and unproductive exercise of laying the extraordinarily elastic categories of [a statute] next to the categories of the Fourth Amendment in an effort to determine whether the two are in some sense compatible.” Sibron, 392 U.S. at 59, 88 S.Ct. 1889. Rather, we should “confine our review instead to the reasonableness of the searches and seizures” that have actually taken place. Id. at 62, 88 S.Ct. 1889.
The Sibron Court reasoned that when a statute’s terms “are susceptible, of a wide variety of interpretations,” id. at 60, 88 S.Ct. 1889, we can only determine if the government has violated Fourth Amendment rights by analyzing the concrete facts in which the statute was applied. “The constitutional point with respect to, a statute of this peculiar sort ... is not so much ... the language employed as ... the conduct it authorizes.” Id. at 61-62, 88 S.Ct. 1889 (citation and internal quotation marks omitted). Here, although counsel represented at argument that unconstitutional searches have occurred at the Patels’ motel, the record is bereft of any details to tell us what happened when the ordinance was invoked.
I am at a loss to understand the Patels’ decision to drop the as-applied challenge they raised in their original complaint. But their facial challenge leaves us with insufficient facts regarding the unconstitutional conduct they allege has occurred. It instead asks us to partake in the gymnastics of the hypothetical, focusing on the “language employed” instead of the “conduct [the ordinance] authorizes.” Id.
The difficulty with this case arises from the disconnect between the language employed in the statute and the conduct the majority concludes the ordinance authorizes. The majority opinion is rife with assumptions about the police conduct that must occur for the ordinance to be applied. To begin, the majority’s analysis starts with the assumption that “ § 41.49 authorizes] warrantless ... inspections.” Maj. Op. at 1060. But it seems plain from the face of the statute that the ordinance would apply to hoteliers with equal force if Los Angeles police officers arrived at a hotel with a legitimate search warrant and the hotelier refused to produce the regis *1067 ter. I have always understood the rule to be that a statute survives a facial challenge if a court can find any circumstance in which it could constitutionally be applied. See Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) (holding that a facial challenge “can only succeed” if “no set of circumstances exists under which the [law] would be valid”). The majority does not even acknowledge this rule of constitutional adjudication.
The plaintiffs went to trial solely on a facial challenge to the statute, which by its nature requires us to consider only the statute’s language. But even if, as the majority suggests, all searches authorized by the ordinance were without warrant and consent — which the statute clearly does not dictate — the majority has still not accounted for “exigent circumstances” that would allow the police to request the guest register without a warrant or consent. See Kentucky v. King, — U.S. -, 131 S.Ct. 1849, 1858, 179 L.Ed.2d 865 (2011) (“[Warrantless searches are allowed when the circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense with the warrant requirement.”). Additionally, the police could request the register under their community care-taking exception; perhaps police might be on the premises to locate a suicidal person whose worried family has asked police to check on his welfare. These would appear to be at least two “set[s] of circumstances ... under which the [law] would be valid.” Wash. State Grange, 552 U.S. at 449, 128 S.Ct. 1184.
But such important constitutional questions should not rise and fall on the vagaries of judicial imaginations. As in Sibron, “[o]ur constitutional inquiry would not be furthered here by an attempt to pronounce judgment on the words of the statute.” 392 U.S. at 62, 88 S.Ct. 1889. Even after considering the stipulation that the Patels have been subject to warrantless searches under the ordinance, we have no concrete facts to analyze the circumstances of each individual search. And even if we did have those facts, the Patels have made the tactical litigation decision to withdraw any challenge to those searches. They leave us with no evidence to prove that all requests made under the ordinance must violate the Fourth Amendment. The majority’s decision to nonetheless entertain the facial challenge eschews Supreme Court guidance to the contrary.
II
The majority ignores Sibron entirely and takes an improperly narrow view of what the statutory text authorizes. The ordinance, on its face, provides only that:
[The register] shall be made available to any officer of the Los Angeles Police Department for inspection. Whenever possible, the inspection shall be conducted at a time and in a manner that minimizes any interference with the operation of the business.
L.A. Mun.Code § 41.49(3)(a). According to the ordinance’s language, if the police request the guest register, the hotel owner must provide it. The ordinance does not claim to alter the LAPD’s constitutional responsibility to adhere to Fourth Amendment safeguards when making any demand for information. We cannot presume that police have violated the Fourth Amendment •without any facts with which to make that determination.
It is clear that when the majority reads the ordinance, it engrafts into it language that is not there:
[The register] shall be made available to any officer of the Los Angeles Police Department for inspection, and the police may conduct such an inspection without a warrant and without consent or any other delineated exception *1068 to the warrant requirement. Whenever possible, the inspection shall be conducted' at a time and in a manner that minimizes any interference with the operation of the business.
I stress again that the majority starts its analysis with the assumption that the ordinance “authoriz[es] warrantless ... inspections.” Maj. Op. at 1060. This reading, enhanced by an imaginary judicial graft on the text, raises a critical difference from the ordinance’s actual language as currently written. If the ordinance were phrased in a manner that would eliminate the warrant requirement entirely, it would implicate Supreme Court precedent suggesting that a. statute may not alter the procedures for obtaining a warrant. Most notably, in Berger v. New York, 388 U.S. 41, 56-58, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), the Court struck down a New York statute allowing the state to obtain a surveillance warrant without probable cause or even particularity as to what the police expected to obtain with the warrant. The Court held that New York’s attempt to alter the procedures for the issuance of a warrant was “offensive” to the Warrant Clause of the Fourth Amendment. Id. at 58-59, 87 S.Ct. 1873.
The majority instead takes a course similar to the Supreme Court in Marshall v. Barlow’s, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), but it does not account for the critical difference between Barlow’s and this case. In Barlow’s, the Court analyzed — in the course of an as-applied challenge based on an actual attempted search — Section 8(a) of the Occupational Safety and Health Act (OSHA), which permitted the Department of Labor:
(1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and (2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent, or employee.
Id. at 309 n. 1, 98 S.Ct. 1816 (emphasis added).[1]
Unlike the Patels, the Barlow’s plaintiff sought to enjoin the statute as it was applied to him — seeking declaratory relief that he did not have to comply with a court order requiring the plaintiff to allow an inspection by an Occupational Safety and Health officer. Barlow’s, Inc. v. Usery, 424 F.Supp. 437, 438-39 (D.Idaho 1976). Through the factual development of his as-applied challenge, it became “undisputed that [the officer] did hot have any cause, probable or otherwise, tó believe a violation existed nor was he in possession of any complaints by any einployee of Barlow’s, Inc.” Id. It was also undisputed that the officer did not seek or possess a warrant for the inspection. Id. at 438.
Before the Supreme Court, the government did not attempt to argue that it could justify the search of the plaintiff under any exception to the warrant requirement. Instead, it argued that all warrantless searches conducted pursuant to Section 8(a) of OSHA should be deemed reasonable — under a new exception the government asked the Supreme Court to announce in Barlow’s itself. Barlow’s, 436 U.S. at 315-16, 98 S.Ct. 1816 (“[The Secretary] suggests that only a decision exempt *1069 ing OSHA inspections from the Warrant Clause would give ‘full recognition to the competing public and private interests here at stake.’”). Not surprisingly, the Supreme Court declined the government’s novel request.
Importantly, the Court did not strike down Section 8(a) of .OSHA altogether. Rather, based on the concrete factual situation that arose from the as-applied challenge — specifically, because the government had conceded that no warrant exception existed for the search of the plaintiffs business — the Court held that the statute was unconstitutional “insofar as it purports to authorize inspections without warrant or its equivalent.... ” Id. at 325, 98 S.Ct. 1816 (emphasis added). As the Court noted, the injunction “should not be understood to forbid thé Secretary from exercising the inspection authority conferred by § 8 pursuant to regulations and judicial process that satisfy the Fourth Amendment.” Id. at 325 n. 23, 98 S.Ct. 1816. Therefore, a search under Section 8(a) would still survive if the government obtained a warrant or could meet an exception to the warrant requirement that would serve as a warrant’s “equivalent.”
The majority appears to believe it is following the lead of Barlow’s when it strikes down the ordinance “insofar as it authorizes inspections of those records without affording an opportunity to ‘obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply.’ ” Maj. Op. at 1064-65. But the record, unlike in Barlow’s, is totally bereft of facts to support the majority’s assumption that the statute is actually being applied in that manner. The Patels put forth no evidence at trial demonstrating that they (or any other hotelier, for that matter)'have not had an opportunity to obtain judicial review of any request for guest registers, nor have they shown that any hotelier has suffered a penalty for refusing to comply. The majority simply lacks the necessary factual predicate to support its conclusion.
Instead we are left with an advisory opinion that engages in the folly Sibron warned us to avoid.[2] The majority must begin with an assumption — that the ordinance authorizes only warrantless searches — unsupported by the face of the statute. Then, by cabining its analysis to only whether a search meets one exception for certain administrative inspections, the majority refuses to acknowledge that the ordinance may be '“susceptible of a wide variety of interpretations.” Sibron, 392 U.S. at 60, 88 S.Ct. 1889. The majority’s ultimate conclusion — that the ordinance is unconstitutional only insofar as it authorizes conduct that the plaintiffs have never proven actually occurred — reveals why “[o]ur constitutional inquiry would not be furthered here by an attempt to pronounce judgment on the words of the statute. We must confíne our review instead to thé reasonableness of the searches and seizures” that actually took place. Id. at 62, 88 S.Ct. 1889.
*1070 ■ Because the Patels intentionally declined to challenge such actual searches, we should vacate the judgment and remand so the district court may dismiss the facial challenge under Sibron. If the Patels are truly subject to searches without a warrant, and the police have no valid reason to circumvent the warrant requirement— which may very well be the case-then the Patels can raise an as — applied challenge to any City attempt to punish them. See Camara, 387 U.S. at 540, 87 S.Ct. 1727. Because the majority has improperly engaged in this “abstract and unproductive exercise,” Sibron, 392 U.S. at 59, 88 S.Ct. 1889, I respectfully dissent.

. The language of Section 8(a) actually authorizes specific government conduct, unlike the ordinance, which only imposes a responsibility on a hotelier. The majority ignores this critical difference.

. "[A]srapplied challenges are the basic building blocks of constitutional adjudication.” Gonzales v. Carhart, 550 U.S. 124, 168, 127 S.Ct. 1610, 167 L.Ed.2d 480 (2007). It is no surprise, then, that the majority’s opinion relies entirely on Supreme Court cases involving them. See Donovan v. Lone Steer, Inc., 464 U.S. 408, 412-14, 104 S.Ct. 769, 78 L.Ed.2d 567 (1984); Barlow’s, 436 U.S. at 320-21, 98 S.Ct. 1816; See v. City of Seattle, 387 U.S. 541, 545-46, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967); Camara v. Mun. Ct., 387 U.S. 523, 540, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). In each of those cases, the Court analyzed whether specific government conduct was unconstitutional, not whether the mere language employed in a statute or regulation was invalid. In this case, we do not have any specific government conduct to adjudicate.